IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| IN THE MATTER OF THE COMPLAINT OF ALISA MORROW AS OWNER OF THE 1996 CRUISERS 36' MOTORYACHT LOLA BABE (HIN: CRSUSH01D696) FOR EXONERATION FROM OR LIMITATION OF LIABILITY | * * * * * * * * * * | Case No. RWT 17-cv-1061 |

## MEMORANDUM OPINION

Before the Court are two motions filed by James Avery Fauntleroy and Shantel Fauntleroy (the "Fauntleroys"), Interested Parties to Plaintiff's Verified Complaint: (1) a Motion to Vacate the Court's Amended Restraining Order and Order for Issuance of Notice that Claims Be Filed issued on July 5, 2017 [ECF No. 16], and (2) a Motion to Dismiss Plaintiff's Verified Complaint for a lack of jurisdiction [ECF No. 17]. For the reasons discussed below, the Court will deny both Motions.

### 1. Background Facts

Plaintiff is the owner of the 1996 Cruisers 36' Motoryacht *Lola Babe* (the "*Lola Babe*"), a pleasure craft. ECF No. 1 at 1–2. On September 18, 2016, starting at about 7:00 p.m., Plaintiff hosted approximately eight guests, including claimant Mr. Fauntleroy, for a party aboard the *Lola Babe*. *Id.* at 2. The *Lola Babe* was moored to a dock at the Fort Washington Marina, located on a tributary of the Potomac River, a navigable waterway of the United States in Fort Washington, Maryland. *Id.* At approximately midnight, Plaintiff left the boat to dispose of trash. *Id.* When she returned, she discovered that Mr. Fauntleroy had fallen overboard while attempting to disembark the *Lola Babe*. *Id.* After several minutes, volunteers recovered an

unconscious Mr. Fauntleroy and administered CPR before paramedics arrived to transport him to the hospital. *Id.* at 3. Mr. Fauntleroy recovered and was released after several days. *Id.*

## 2. Procedural History

Plaintiff commenced this action on April 18, 2017, claiming the right to exoneration from or limitation of liability, pursuant to the Limitation of Liability Act, 46 U.S.C. §§ 30501–30512, for any loss, damage, or injuries caused by or resulting from the September 18–19, 2016 incident. ECF No. 1. On the same day, Plaintiff moved for an order accepting the *ad interim* stipulation for value of the *Lola Babe*, the entry of a restraining order, and an order for issuance of notice that the proceeding has commenced. ECF No. 2. The Court held a hearing on the pending motions on June 29, 2017. ECF No. 6.

On July 5, 2017, the Court issued an Amended Restraining Order and Order for Issuance of Notice that Claims Be Filed. ECF No. 8. The Court ordered that: (1) any claims alleging damages arising from the September 18–19, 2016 incident, including any claims alleged by Mr. Fauntleroy, be filed on or before August 16, 2017 at 5:00 p.m.; (2) notice to Mr. Fauntleroy be served on or before August 16, 2017 at 5:00 p.m.; (3) notice be given by publication in *The Daily Record* newspaper once a week for four successive weeks prior to August 16, 2017; (4) notice be mailed to Mr. Fauntleroy, his attorneys, and to any other known claimant; and (5) any and all suits, actions, or proceedings arising out of the incident other than the action pursued by Mr. Fauntleroy be stayed and restrained. *Id.* at 2–3. On August 4, 2017, Plaintiff filed a Return of Service affidavit for service on Mr. Fauntleroy. ECF Nos. 10, 11. On September 11, 2017, Plaintiff filed an Affidavit of Donald J. Walsh, who attested to the compliant publication of Notice of Plaintiff's Complaint in *The Daily Record*. ECF No. 21.

On July 18, 2017, the Court issued an Order Allowing Filing of *Ad Interim* Stipulation for Value by Plaintiff, including $49,900.00 as the post-incident value of the *Lola Babe*, and security for costs in the amount of $1,000.00 plus estimated interest for the pendency of this action at the rate of 6% per annum ($5,988.00), for a total *Ad Interim* Stipulation in the amount of $56,888.00, pursuant to U.S. District Court of Maryland Local Admiralty Rule (f). ECF No. 9.

On August 17, 2017, the Fauntleroys filed their Answer to Plaintiff's Verified Complaint [ECF No. 13] as well as (1) a Motion to Accept Pleadings [ECF No. 15]; (2) a Motion to Vacate the July 5, 2017 Order [ECF No. 16]; and (3) a Motion to Dismiss the Verified Complaint for lack of jurisdiction [ECF No. 17]. Plaintiff timely filed her Responses to the Motion to Vacate and Motion to Dismiss. ECF Nos. 19, 20. The Court now addresses those two Motions. The Motion to Accept Pleadings will be disposed of in a separate order.

### 3. Motion to Vacate

The Fauntleroys' Motion to Vacate argues that the July 5, 2017 Order "appears to impermissibly shorten the time" for Counsel to file counterclaims arising from the incident. ECF No. 16. In essence, they are asking the Court to enlarge the time within which claims had to be filed. *Id.* The Fauntleroys, however, do not provide any authority to support an argument that the Court's July 5, 2017 Order contravened applicable law. Petitioner complied with the specific process outlined by the Limitation of Liability Act and the Federal Rule of Civil Procedure Supplemental Rules for Admiralty or Marine Claims F. The Fauntleroys have not asserted any allegations of noncompliance or impropriety with the applicable law or with the Court's Order. Without a showing of good cause for an enlargement of time or any authority undermining the Court's Order, the Court must deny the Motion to Vacate.

## 4. Motion to Dismiss

The Fauntleroys assert that the Court should dismiss Plaintiff's Verified Complaint for lack of federal admiralty or maritime jurisdiction. ECF No. 17. Because the Limitation of Liability Act alone is likely not sufficient to confer federal question jurisdiction on federal courts, exercise of jurisdiction over limitation actions requires that an owner bringing the action make a showing of Article III admiralty or maritime jurisdiction. *See, e.g.*, *Seven Resorts, Inc. v. Cantlen*, 57 F.3d 771, 773 (9th Cir. 1995) (finding that the Limitation of Liability Act did not create federal question jurisdiction when asserted "clearly in the nature of a defense" to an incident that occurred outside of admiralty jurisdiction); *Three Buoys Houseboat Vacations U.S.A. Ltd. v. Morts*, 921 F.2d 775, 779–80 (8th Cir. 1990) ("Federal question jurisdiction is not created by the existence of the Act. The Act is really in the nature of a defense, it did not create Appellees' causes of action for personal injury and wrongful death against Appellant.").

United States District Courts have original, exclusive jurisdiction over all "civil case[s] of admiralty or maritime jurisdiction." 28 U.S.C. § 1333. For a court to have jurisdiction over a tort claim pursuant to 28 U.S.C. § 1333, a party must satisfy two tests: (1) the location test, and (2) the connection with maritime activity test. *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995); *Sisson v. Ruby*, 497 U.S. 358, 361–64 (1990). Under the location test, a court "must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water." *Id.* Under the connection with maritime activity test, there are two steps: First, a court "must 'assess the general features of the type of incident involved,' to determine whether the incident has 'a potentially disruptive impact on maritime commerce.'" *Id.* (quoting *Sisson*, 497 U.S. at 363–64 n.2). Second, a court "must determine whether 'the general character' of the 'activity giving rise

to the incident' shows a 'substantial relationship to traditional maritime activity.'" *Id.* (quoting *Sisson*, 497 U.S. at 365–67).

Here, there is no dispute that the location test is met because the *Lola Babe* was docked at the Fort Washington Marina, on a tributary of the Potomac River, a navigable waterway. ECF No. 1 at 2. The dispute, then, centers on the connection with maritime activity test. The Fauntleroys argue that the circumstances here do not "suggest a sufficient relationship to traditional maritime activity" because the accident occurred in shallow waters in close proximity to a docked vessel and the *Lola Babe* is a noncommercial, pleasure craft. ECF No.17 at 2–4. In support of this contention, the Fauntleroys cite to two cases from the Court of Appeals for the Second Circuit. *Id.* at 3 (citing *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239 (2d Cir. 2014); *In re Petition of Bruce Germain*, 824 F.3d 258 (2d Cir. 2014)).

The U.S. Supreme Court long ago established that maritime jurisdiction is not limited to commercial vessels. *Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 674 (1982). Moreover, due to the potential impact noncommercial vessels could have on maritime commerce when docked at marinas on navigable waterways, admiralty jurisdiction extends to such docked vessels. *See Sisson v. Ruby*, 497 U.S. 358, 362–63 (1990) (finding fire erupted on docked pleasure vessel "[c]ertainly . . . has a potentially disruptive impact on maritime commerce"). Accordingly, the Court moves on to apply the connection test to the circumstances here.

To do so, *Sisson* directs the Court first to characterize the "general features" of the incident. The general features of the incident at issue in this case can be described as a passenger attempting to disembark from or falling off of a vessel into navigable waters. Described as such, applicable caselaw supports a finding that the egress from a vessel, especially one that results in rescue efforts, has the potential to disrupt commercial maritime activity.

5

In *White v. United States*, 53 F.3d 43, 47 (4th Cir. 1995), the Fourth Circuit stated clearly that "[f]ederal admiralty jurisdiction extends to the means of ingress and egress, including but not limited to the gangway of a vessel in navigable waters." There the court held that jurisdiction existed where a person lost her balance at the end of the gangway while disembarking and injuring herself on equipment stored on the pier. *Id.* at 46–47. The court explained that "[g]iven the importance of safe means of ingress and egress for any vessel in port, the general features of White's gangway mishap have potentially disruptive impact on maritime commerce." *Id.* at 48. Although Mr. Fauntleroy fell overboard and not onto the pier, the same potentially disruptive impact on maritime commerce that unsafe ingress and egress onto any vessel can have applies here.

Other jurisdictions have similarly held that an incident where a passenger falls or jumps off a vessel on navigable waters gives rise to maritime jurisdiction, especially when rescue efforts are required. *See, e.g.*, *Taghadomi v. United States*, 401 F.3d 1080, 1087 (9th Cir. 2004) (finding jurisdiction over incident caused by capsized kayak and failed rescue efforts by the Coast Guard); *Wright v. United States*, 883 F. Supp. 60 (D.S.C. 1994) (finding jurisdiction over incident where woman dove from pleasure boat in unauthorized place and injured her finger); *In re Bird*, 794 F. Supp. 575, 580–81 (D.S.C. 1992) (finding jurisdiction over incident where one passenger pushed another passenger overboard from an anchored boat in navigable waters). Here, volunteers responded to Mr. Fauntleroy's fall and rescue personnel were subsequently called to the scene. Similar to the cases cited above, the search for him in the navigable waters had the potential to disrupt the navigation of other vessels in the marina as well as to put the volunteers and rescue personnel at risk.

The second step of the inquiry is easily met. To begin, the Court must define the "general character" of the activity giving rise to the incident. The general character of the activity here can be described as hosting passengers on a docked vessel. In *Grubart*, the U.S. Supreme Court stated clearly that its precedent set out in *Sisson* provides that the "storing [of boats] at a marina on navigable waters" "falls within the substantial relationship" with traditional maritime activity. *Grubart*, 513 U.S. at 540. The fact that Mr. Fauntleroy *fell* overboard actually adds to the substantial relationship to traditional maritime activity, just as incidents inviting rescue have the potential to disrupt commercial maritime activity. In *Matthews v. Howell*, 359 Md. 152, 169, 753 A.2d 69, 78 (2000), the Court of Appeals of Maryland held that an incident where a woman inexplicably dove into the water from an idling boat in the Chesapeake Bay gave rise to maritime jurisdiction because (1) a vessel in navigable waters while a rescue effort was underway has the potential to disrupt maritime activity, and (2) the search effort by the Maryland Department of Nature Resources Police for a person gone overboard from a vessel had a substantial relationship to traditional maritime activity.

The two cases cited by the Fauntleroys actually lend their support for the Court's jurisdiction over this case. In *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239 (2d Cir. 2014), the court found that there was no maritime jurisdiction where a fist fight took place on a dock fixed to the land because there was an insufficient hazard to maritime activity. The court described the incident as "a physical altercation among recreational visitors on and around a permanent dock surrounded by navigable waters." *Tandon*, 752 F.3d at 249. The court focused on the fact that the dock was permanently connected to the land underneath or beside navigable waters and thus any incident on such a dock did not pose the same risks as an incident on a vessel on navigable water. *Id.* at 250. This is starkly distinct from the case here,

7

which involved an incident originating from within the vessel on navigable waters and ended with Mr. Fauntleroy in those same waters.

The Second Circuit proceeded to distinguish *Tandon* in the second case cited by the Fauntleroys. In *In re Petition of Germain*, 824 F.3d 258, 274 (2d Cir. 2016), the court found maritime jurisdiction where a person was injured after he jumped off of a boat in shallow water on Lake Oneiada in New York. The fact that the injury occurred because of a passenger jumping off of a vessel on navigable waters, as well as requiring subsequent rescue efforts, there was sufficient potential to disrupt maritime activity, and the incident was substantially related to traditional maritime activity. *In re Petition of Germain*, 824 F.3d at 271–74.

Based on the foregoing, it is clear that the incident involved here—a passenger disembarking from the vessel and falling into the water—can potentially disrupt commercial maritime activity and is substantially related to traditional maritime activity. The Court, therefore, finds that it has jurisdiction over the case. Accordingly, it will deny the Motion to Dismiss.

### 5. Conclusion

Based on the foregoing, this Court will deny the Faunterloys' Motion to Vacate and Motion to Dismiss. An order to that effect will accompany this Opinion.

Date: February 12, 2018

/s/
ROGER W. TITUS
UNITED STATES DISTRICT JUDGE